LEW SUN SOON v. TILLINGHAST, Commissioner of Immigration.

District Court, D. Massachusetts. August 4, 1928.

No. 3910.

Aliens ⬅️32(9)—Finding that applicant for admission as son of citizen was not entitled thereto, because of inconsistencies in testimony, held arbitrary and unreasonable.

Finding of immigration tribunal that alien. applying for admission as the son of a citizen, was not entitled to admission, based on certain inconsistencies between statements of applicant and those of his brother respecting collateral matters, *held* unreasonable and arbitrary, so as to constitute a denial of a fair hearing.

Habeas Corpus. Proceeding by Lew Sun Soon against Anna C. M. Tillinghast, Commissioner of Immigration. Petition granted.

Everett F. Damon, of Boston, Mass., for petitioner.

Habeas corpus to Commissioner of Immigration. Judgment was given orally at the conclusion of the hearing, in substance as follows:

MORTON, District Judge. The alien in question, Lew Sun Soon, claims admittance as the son of Lew Jin (Gin) Hoo (How), whose birth and citizenship in this country are conceded. The only issue is the alleged relationship. On it the immigration tribunals found against the applicant. The present question is whether their finding was unreasonable and arbitrary, in view of the evidence in the applicant's favor.

Testimony in support of his contention was given by himself, his alleged brother, Lew Sun Poy, and his alleged cousin, Lew Sin Wah. There was no opposing testimony. The alleged father is said to have died in 1909, when the applicant was 2 years old. The evidence was discredited, and the applicant debarred, because of inconsistencies between his statements and those of his brother, which, it was held, cast doubt upon the bona fides of the claim.

These inconsistencies were: First, that the applicant said the houses in the village were attached to each other, while his brother said they were detached; there being spaces of a few feet between them. The

brother later testified that he was wrong about this, and was thinking of the narrow lanes. Second, with respect to the lighting and arrangement of the ancestral hall where they attended school. And, third, as to balconies on certain rooms in the family home. Obviously these matters had no bearing on the real issue; they are germane only as affecting credibility. On that point they could be considered only in connection with the testimony as a whole. The precise question is whether they fairly warranted the conclusion that the two witnesses were so unreliable that their testimony ought not to be accepted.

The record comprises about 46 pages of close typewriting, nearly 15,000 words. About 40 pages of it is the testimony of the applicant and his alleged brother. It is a minute and detailed examination as to the family and the village where they lived. At times it approached the limits of fairness; e. g., when statements of an imposter, who had deceived the immigration authorities by passing himself off as the father after the latter's death, were put to the witnesses as having been made by their father, and they were called upon to explain them. The discrepancies referred to are the only ones relied on to discredit the evidence of the applicant and his witnesses. Statements of previously admitted relatives of the applicant were put in evidence, but are not mentioned in the decisions of the immigration tribunals, nor included in the record, from which I infer that they contained nothing inconsistent with the present claim.

The strength of the case for the applicant cannot be easily summarized. On hundreds of little intimate matters concerning the village or the family, his evidence and that of his alleged brother were in accord, a fact which must be faced as much as the discrepancies. They say that they are brothers, sons of the same father and mother, brought up in the same family in a certain village in China. Testifying, not in each other's hearing, they give alike innumerable details of the family. They describe alike the village almost house by house, telling who lived in each, that this man was in the United States, that one in the Straits Settlement, a third somewhere else. In all these minutiae they are in accord.

This entire aspect of the case is absolutely ignored in the decisions of the immigration tribunals. They evidently hesitated, as well they might, to make a finding that fabrication to such an extent was possible for these witnesses, or for anybody. The chairman of the Board of Special Inquiry deals with the merits of the application by saying "the testimony of the applicant, his alleged brother, Lew Sun Poy, and his alleged cousin, Lew Sin Wah, discloses several discrepancies and contradictions, and I am of opinion that the claimed relationship has not been reasonably established." It is by no means clear that some of the discrepancies relied on to justify the excluding decision were not due to misapprehension or mistake. In the descriptions of the ancestral hall, for instance, there are striking points of agreement on minute details; and both witnesses drew plans of the building, which were not sent forward with the testimony. The case seems to me to present an extreme instance of a method of dealing with such matters which has been judicially criticized in strong terms. Johnson v. Damon ex rel. Leung Fook Yung (C. C. A.) 16 F.(2d) 65.

I find that the petitioner was not accorded a fair hearing before the immigration tribunals; that their conclusions were arbitrary and unreasonable; that he is, as he claims to be, the son of Lew Jin Hoo; and that he is entitled to enter this country.